the legislature to be in force, it remained no longer in force after this act was made, even had it been so till then. Whatever doubt might have existed otherwise, yet the words of the bill of rights and the constitution themselves show that, in the opinion of those who framed them, this act was deemed inconsistent with the freedom and independence of this state. This act, therefore, was not one of those declared to be in force, and consequently, if no exception is to be made of this case in particular, it is to be deemed abrogated, at least from that time. There being special provision in the constitution concerning entails, any act on this subject might be deemed impliedly excepted from these general words if such estates then in being were to be entirely destroyed by it; but if they were not, the only effect such a construction could have would be to reduce them to their common law condition, that is, to make them fees conditional, by taking off the restraint of alienation which the statute de donis imposed, and which restraint constituted the whole danger from them which the constitution contemplated. If this view of the subject be proper, then, as this act was passed in April, 1778, when David Minge was alive, instead of holding an estate tail, as before, he held an estate called a fee conditional one, the property of which undoubtedly was, as he had then issue born capable of inheriting the estate, to alien the estate as he thought proper. His alienation, accordingly, to Gilmour and Hendric, under the deed of the 15th February, 1779, is (upon this ground) a complete bar to the lessor of the plaintiff, independent of all other circumstances in the case. I do not, however, confidently rely upon this principle; but whatever doubt may be entertained on that part of the case, I am clear in the former reasons I have urged, showing that the title of the lessor of the plaintiff (if he ever had any) was constitutionally taken away by the conjoint operation of the constitution and the act of assembly passed in pursuance of its express authority; and therefore that he must fail in this case as well for want of title as from pursuing an improper remedy.

I am althorized to say my Brother SITGREAVES [District Judge] concurs in this opinion; the consequence is that there must be judgment for the defendant.

MINGO (UNITED STATES v.). See Case No. 15,781.

MINGOS (VICTOR SEWING-MACH. CO. v.). See Case No. 16,936.

## Case No. 9,632.

### MINI v. ADAMS.

[The case reported under above title in 3 Wall. Jr. 20, and 12 Leg. Int. 4, is the same as Case No. 2,673.]

## Case No. 9,633.

### MINIFIE v. DUCKWORTH.

[2 Cranch, C. C. 39.] [1]

Circuit Court, District of Columbia. Dec. Term, 1811.

JUSTICE OF PEACE—APPEAL—CASE TRIED DE NOVO.

Upon an appeal from the judgment of a justice of the peace, the cause is to be tried de novo.

THE COURT said that the appeal suspended the judgment below, and the cause must be tried de novo, as if no judgment had been rendered.

MINIFIE (NEALE v.). See Case No. 10,070.

MINIFIE (UNITED STATES v.). See Case No. 15,782.

## Case No. 9,634.

### The MINNA.

[Blatchf. Pr. Cas. 333.] [2]

District Court, S. D. New York. March 26, 1863.

PRIZE—VIOLATING BLOCKADE—JUDICIAL NOTICE.

1. Vessel and cargo condemned for an attempt to violate the blockade.

2. The court will take judicial notice of the fact that the shipper at Nassau, a neutral port, of a cargo captured as prize, for an alleged attempt to violate the blockade, is a person who is shown by the records of the court to have been actively engaged in trading to and from the blockaded ports of the enemy.

In admiralty.

BETTS, District Judge. A libel was filed in this suit March 2, 1863. The warrant of attachment and the monition issued thereon were returned by the marshal as duly served, on the 24th of the same month. A default was ordered therein by the court, and the ship's papers, with the proofs in preparatorio, and the proceedings in the suit, were, on the same day, submitted to the court for adjudication. The libel alleges the capture of the vessel and cargo by the United States steamer Victoria, on the 18th of February last, at sea, near Beacon Inlet, off the coast of North Carolina, and that the vessel and cargo are subject to condemnation and forfeiture as prize of war, and sent to this port for adjudication for that cause. There was found on board of the vessel, when seized, a certificate of British registry of the vessel, at the port of Quebec, to Thomas Norris, of that place, as owner, bearing date October 10, 1853. There are frequent changes of the command of the vessel indorsed on the registry, down to the date of

---

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by Samuel Blatchford, Esq.]